## A91A0405. SHANNON v. RADO.
(408 SE2d 441)

POPE, Judge.

Plaintiff Stuart A. Rado sued defendant Grant W. Shannon for libel and was awarded judgment on a jury verdict of $1,000 general damages and $100,000 punitive damages. Defendant appeals.

The trial evidence shows defendant was an employee of Jameson Associates, Inc., a career consulting firm. Plaintiff was a dissatisfied client of a competing consulting firm and had undertaken a nationwide consumer advocacy campaign against the career consulting industry. In the course of his efforts, plaintiff contacted by letter approximately 1,300 clients or former clients of Jameson Associates. Jameson received letters of complaint from some of its clients which referred to plaintiff and information plaintiff had supplied to them. Defendant responded to some of these letters, two of which form the basis of plaintiff's complaint. One letter stated: "Stuart A. Rado has been unemployed for many years. We have heard that he lives on a trust fund and occupies his leisure time spreading injurious falsehoods concerning our firm and others. His views are wrong." Another stated: "Stuart Rado . . . appears to lead a gay, jobless, trust-funded life, spreading injurious falsehoods concerning Jameson Associates. In fear of Aids [sic], I would not touch anything he lays a hand on. Rado is into his own thing and likely has little interest in your welfare."

1. Defendant argues plaintiff is a public figure for the purpose of

the controversy at issue in this case and, thus, the trial court erred in failing to instruct the jury that plaintiff could recover damages for libel only if actual malice is shown.

In determining whether a plaintiff is a public figure, the relevant issue is "the 'nature and extent of (this) individual's participation in the particular controversy giving rise to the defamation.' [Quoting *Wolston v. Reader's Digest Assn.*, 443 U. S. 157, 167 (99 SC 2701, 61 LE2d 450) (1979).] The standard to be met is: 1) Did plaintiff voluntarily thrust himself into the vortex of this particular controversy? 2) What was the nature and extent of his participation in this particular controversy? 3) Did he encourage the public's attention in an attempt to influence the outcome of this particular controversy?" *Hemenway v. Blanchard*, 163 Ga. App. 668, 671 (294 SE2d 603) (1982).

In the case now before us, the answer to the first and third of these questions is resoundingly, "Yes." As to the second question, the evidence shows plaintiff participated extensively in the controversy. Plaintiff commenced a nationwide campaign to expose what he believed to be fraudulent practices in the career counselling industry. He testified that CBS television network broadcast an exposé of the issue on its "60 Minutes" program as a result of his bringing the story to the network's attention. Newspaper articles from the Baltimore Sun, Chicago Tribune and USA Today and an article from U. S. News & World Report were admitted into evidence which quoted plaintiff, pictured him and identified him as a leading consumer advocate for complaints against career counselling firms. He clearly sought public attention in an attempt to influence the outcome of the controversy. Where, as here, a plaintiff in a defamation action thrusts himself into the forefront of a public controversy at issue he becomes a public figure in regard to that issue and can recover damages only if actual malice is shown. See *Woy v. Turner*, 573 FSupp. 35 (N.D. Ga. 1983). See generally *Curtis Publishing Co. v. Butts*, 388 U. S. 130 (87 SC 1975, 18 LE2d 1094) (1967).

Whether a plaintiff in a defamation action is a public figure is an issue for the judge. *Williams v. Trust Co.*, 140 Ga. App. 49 (II) (230 SE2d 45) (1976). We hold the trial court erred in finding the plaintiff in this case is not a public figure for the purposes of this particular controversy and in failing to instruct the jury on the necessity of finding actual malice before damages could be awarded to plaintiff.

Defendant's motion for new trial should be granted. We turn now only to those additional errors enumerated by defendant which may recur upon retrial of the case.

2. We find no error in excluding certain hearsay testimony by co-defendant Edward Bandtlow. Defendant argues the testimony is admissible as an exception to the hearsay rule because it is offered to explain his conduct in writing the letters which form the basis for

plaintiff's complaint and to show he obtained the information contained in the letters from Bandtlow. Defendant's own testimony adequately establishes these facts, as is illustrated by the verdict awarding defendant $50,500 in his cross-claim against Bandtlow alleging he is entitled to indemnity from Bandtlow for any judgment entered against him in the case. It was not necessary to admit in evidence the information Bandtlow had obtained from third parties, some of whom were unidentified.

3. Defendant's argument that the award of punitive damages in a civil case is unconstitutional has been rejected by the Georgia Supreme Court in *Hospital Auth. of Gwinnett County v. Jones*, 259 Ga. 759 (3, 4 & 5) (386 SE2d 120) (1989). Thus, the trial court did not err in denying defendant's motion for partial summary judgment on plaintiff's claim for punitive damages.

We need not address defendant's remaining enumerations of error.

*Judgment reversed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED JUNE 20, 1991 —
RECONSIDERATION DENIED JULY 16, 1991 — 

*Greer, Klosik & Daugherty, Jeffrey F. Leasendale,* for appellant.
*Stanley M. Lefco, Ned Blumenthal,* for appellee.